## HINES *v.* UNION SAVINGS BANK AND TRUST CO.

Mere knowledge by a lender of money that a borrower intends to use it for an illegal or immoral purpose will not prevent a recovery of the money loaned ; and a plea to an action to foreclose a mortgage on realty, given to secure the payment of a note, which sets up that the money loaned was used for an illegal and immoral purpose, to wit, the suppression of a threatened criminal prosecution of the defendant's husband, and that the lender knew or had reasonable grounds to suspect the purpose for which the money was borrowed, but which does not charge that the lender participated in the illegal transaction or did anything to further the consummation of the unlawful design, sets forth no valid defense and is properly stricken on demurrer.

Argued June 18, — Decided July 14, 1904.

Foreclosure of mortgage.  Before Judge Littlejohn.  Lee superior court.  November 6, 1903.

*Allen Fort & Son* and *Long & Son,* for plaintiff in error.

*Bacon, Miller & Brunson, W. C. Nottingham,* and *C. H. Beazley,* contra.

CANDLER, J.  The Union Savings Bank and Trust Company brought suit in Lee superior court to foreclose a mortgage on real estate, given by Mrs. R. S. Hines to secure the payment of a note executed by her and payable to the bank.  The defendant filed a plea in which she admitted the execution of the note and mortgage and set up substantially the following defense:  Defendant is a married woman, and was at the time of the execution of the note and mortgage.  Her husband, who was at that time tax-collector of Lee county, "was threatened with criminal prosecution on account of a shortage in his accounts with the County of Lee." The securities on his official bond " were also crowding him, — pressing for a settlement of a claimed shortage as aforesaid;" and the note and mortgage were given to settle the shortage and " to prevent her said husband from being jailed and prosecuted as

aforesaid." She averred that the contracts were given for an illegal and immoral purpose, viz., to prevent an impending prosecution, and denied that she was liable thereon. By amendment she averred that she was induced by the threats of her husband's bondsmen to give the note and mortgage to raise the money for the purpose of suppressing a prosecution of her husband for embezzlement; that the note and mortgage were executed in blank, and that the plaintiff's name was added when the papers were discounted. In both the original plea and the amendment she averred that the plaintiff knew or had reasonable grounds to suspect the purpose for which the note and mortgage were given. The plaintiff demurred to the plea generally and specially; its general demurrer was sustained, and the plaintiff excepted.

It is very questionable whether the plea was sufficiently definite in its averments as to the illegality of the purpose for which the note was given, or, to state it more accurately, the use to which the money raised by the note and mortgage was applied. The original plea is very vague on this point. It avers that the plaintiff's husband "was threatened with a criminal prosecution," and that the securities on his bond "were also crowding him, — pressing him for a settlement of a claimed shortage," but nowhere is it averred that criminal proceedings had been instituted or were about to be instituted. Where fraud or illegal and immoral consideration is relied on as a defense to an action, particularity of pleading is required of the defendant, and vague generalities will not avail. *Carswell* v. *Hartridge*, 55 *Ga.* 412; *Martin* v. *Moore*, 63 *Ga.* 532; *Tolbert* v. *Ins. Co.*, 101 *Ga.* 746; *James* v. *Kelley*, 107 *Ga.* 446. But treating this defect as cured by the amendment, which is extremely doubtful, we are still of the opinion that the demurrer was properly sustained, for the reason that the plea does not set up a sufficient connection on the part of the bank with the illegal purpose for which the money was alleged to have been obtained, to defeat its recovery in an action on the note or to prevent the foreclosure of the mortgage given to secure its payment. It is well settled that mere knowledge, without more, on the part of a lender of money that the borrower intends to use the money for an illegal purpose, will not defeat a suit for its recovery. There must be a participation in the illegal act, or a furtherance of the unlawful design. This principle was expressly recognized in the

case of *Singleton* v. *Bank of Monticello*, 113 *Ga.* 527, where the plea was that the money sued for was loaned for the purpose of speculating on margins. It was there held that the plea contained enough to take to the jury the question whether the bank, through its officer, had loaned the money for the purpose of aiding and abetting the illegal transaction; but in the opinion (p. 531) Mr. Justice Lewis said: "It is clear that if the Bank of Monticello loaned its money to Singleton absolutely, without concerning itself as to the disposition which he might make of it, the knowledge of its cashier, who was its authorized agent, that Singleton was borrowing the money for the sole purpose of engaging in a gaming transaction would not, without more, vitiate its claim against him. A plea which set forth no more than this would have been properly stricken on demurrer." So, also, in the early case of *Howell* v. *Fountain*, 3 *Ga.* 176, where it was held that no action can be maintained upon a contract growing out of an immoral or illegal transaction, when the transaction was not subsequent or collateral, but directly connected with the unlawful act, Nisbet, J., delivering the opinion, said: "The distinction relied upon in this case by counsel for the complainant is this, to wit: admitting the proposition . . that no action can be maintained upon an illegal or immoral contract, yet where the contract was disconnected with the original unlawful act, and was founded on a new and distinct consideration, an action might be maintained upon it, although it could not be maintained upon a contract directly arising out of the illegal act. This distinction is well founded, and we recognize it."

In the present case, the plea does not charge that the bank or any one connected with it had any concern whatever in the disposition of the money loaned to the defendant. It does not appear that the alleged illegal and immoral transaction was in any proper sense the consideration of the note and mortgage; on the other hand it appears that the two were distinct transactions. It is not claimed that the bank had any connection with the suppression of the prosecution of the defendant's husband, beyond the bare knowledge or reasonable ground of suspicion that the defendant intended to use the borrowed money for that purpose. Clearly, that is not enough to defeat a recovery of the money borrowed. On this subject the authorities cited in the opinion in *Singleton* v.

*Bank of Monticello*, supra, are convincing, and need no further elaboration.    *Jones* v. *Dannenberg Co.*, 112 *Ga.* 426, and other cases cited by counsel for the plaintiff in error are not in point, for the reason that in each of them the illegal transaction was directly connected with the debt declared on, and constituted the consideration moving the parties, while here it was collateral and wholly disconnected from the note and mortgage.    There was no error in sustaining the general demurrer to the plea.

The bill of exceptions also complains of the judgment of the court allowing attorney's fees; but as this point was abandoned in the argument before this court, it will not now be considered.

*Judgment affirmed.    All the Justices concur.*