25194, 25195. GRANTHAM TRANSFER COMPANY, INC. et al. v. HAWES, Commissioner; and vice versa.

ARGUED MAY 13, 1969—DECIDED JUNE 12, 1969—
REHEARING DENIED JULY 10 AND JULY 24, 1969.

438

*Westmoreland & Patterson, Carl W. Westmoreland, Heard & Leverett, E. Freeman Leverett,* for appellants.

*Arthur K. Bolton, Attorney General, Harold N. Hill, Jr., Executive Assistant Attorney General, Louis F. McDonald, William L. Harper, Assistant Attorneys General,* for appellee.

*Hansell, Post, Brandon & Dorsey, Albert G. Norman, William G. Grant,* for parties at interest not parties to record.

DUCKWORTH, Chief Justice. ■■ Since it has been variously referred to in the briefs for both sides of this dispute, we think it necessary for us to dispose of the order of February 18, 1966, wherein a judgment in a stated amount was rendered in favor of the Revenue Commissioner (which has been paid and hence is out of this case). Added to that judgment was the following: "Further ordered, That in all other respects, the motion for summary judgment is hereby denied." The court did not say upon what grounds its denial of summary judgment was based. If known what was the basis for that judgment it would be the law of the case as to such ground, but since that judgment fails to state the ground or grounds upon which it was based, we are unable to say what was the ground and hence will not hold that it is the law of the case on any questions presented in the present appeal for decision.

But since that judgment was affirmed in *Undercofler v. Grantham,* 114 Ga. App. 868, 871, supra, hereinafter referred to as *Grantham,* in which only three of the five concurring judges held that there was an issue of fact, it might be said that such a statement in that opinion gives the grounds upon which this part of the judgment was based and it thereby became the law of the case to the effect that an issue of fact is made by this record which is, in substance, the same as that there considered. This cannot be true, as only five of the nine judges of that court concurred in the judgment of affirmance with two of these concurring in the judgment only. Four dissented. This renders the entire opinion not a ruling by the court but merely the view of only three judges, which is no ruling at all, and hence it cannot constitute the law of the case. See *Southern R. Co. v. Parker,* 194 Ga. 94, 102 (21 SE2d 94); *Smith v. State,* 196 Ga. 595, 602 (27 SE2d 369), and *McCurry v. McCurry,* 223 Ga. 334 (155 SE2d 378), which hold that minority opinions are not binding, although the judgments were concurred in by a majority of the court. We therefore put those judgments aside as having no relevancy to the issues in this case.

■ With the ground thus cleared we proceed to a decision on the real merits of this case. The cross appeal presents the decisive question. If the six written instruments executed by

Grantham and the six motor common carriers are leases, then the tax claim is valid. If these instruments are not leases of tangible personal property, the tax claims are invalid. As a famous Governor often said, "Let's look at the record."

(a) The instrument with Atlas Van Lines, Inc., is headed "Motor Vehicle Lease Agreement." It designates Grantham as lessor and Atlas as lessee. It recites that lessor leases to lessee a described Chevrolet truck. It contains this meaningful clause that lessee "agrees to pay and lessor agrees to accept compensation specified in the applicable rules and regulations of Atlas as full and complete payment for the performance by lessor of all obligations herein imposed." It is also agreed that the motor vehicle shall be in the exclusive direction and control of Atlas who shall assume all liability to shippers and the public for loss or damage to cargo. In addition this agreement also reads: "For and in consideration of the covenants herein contained, and in further consideration of the rental paid or to be paid, the parties hereby agree" to the leasing of a described motor vehicle and to respective covenants of both parties. We hold that as a matter of law, this instrument is a lease of tangible personal property.

(b) The instrument executed by Grantham and Georgia Highway Express, Inc., and/or B. C. Trade Lines, Inc., containing substantially the same provisions as the Atlas instrument contains the following significant clause, to wit: "Lessee agrees to pay to the lessor, and lessee agrees to accept, as consideration for the use of the above described equipment the following amounts—70% of gross revenue to accrue to Grantham Transfer & Storage Co. (lessor), Remaining 30% to accrue to Georgia Highway Express, Inc., and/or B. C. Truck Lines (lessee)." These unambiguous expressions cannot be construed other than that the consideration is for the use of the equipment, hence there is a lease.

(c) The instrument with R. C. Motor Lines, Inc., contains substantially the same covenants and agreements as the ones with Atlas, and it deals with consideration by the following sentence, to wit: "Lessee agrees to pay the lessor as consideration for the use of the vehicle described above, the sum of 75% of

R. C. Motor Lines, revenue." Again a plain lease of equipment is shown.

(d) The instrument with Central Truck Lines, Inc., containing substantially the same covenants and agreements as the Atlas contract, contains this sentence: "Lessee agrees to pay to the lessor as consideration for the use of the vehicle described above, the sum of 67% of Central Truck Lines, Inc. revenue." It could not be expressed more plainly that the receipts by Grantham are rentals.

As to the foregoing four agreements, we hold them to be leases for tangible personal property and the considerations paid thereunder were for the use of such property, and hence under *Code Ann.* § 92-3402a(c) (Ga. L. 1951, pp. 360, 362; 1960, pp. 153, 154; 1967, p. 284) subject to the taxes.

But we have much difficulty in construing the agreements with Tompkins Motor Lines, Inc., and Harper Motor Lines, Inc. Undoubtedly, they were for the same purposes as the other instruments but the absence in them of plain expressions as to what is paid for and the description in Harper of the parties as contractor and carrier, and again as carrier and independent contractor, and in the Tompkins' contract it is provided that: "Payment to the contractor will be made according to the attached schedule." The attached schedule contains "Compensation—Lessee agrees to pay and contractor agrees to accept as compensation for the lease of a tractor and trailer and reimbursement for the services of any driver or the contractor if he acts in the capacity of a driver according to the following schedule of pay . . . All loads moving between Atlanta, Georgia, and Nashville, Tennessee, tractor, 52½%, tractor and trailer, 70%." This language continues in similar fashion for a number of routes. It then provides that the above schedule rates of pay are subject to the following deductions. Then follow instances when deductions in stated dollars shall be deducted from the contractor's pay. The shifting of descriptions of the parties or the instrument from lease to contract does not even shake our determination to call them what their obligations and substance cause them to be. In this "no man's land" we must look to anything that might reflect their meaning. Beyond any doubt Grant-

ham and the motor common carriers had the same idea in view in all the agreements. The results flowing from all six agreements were the same. Therefore, changing in immaterial ways these two instruments from the other four straightforward ones which even spell out "lease" will not be allowed to change the tax liability under all of them. We do not censure Grantham for arranging his business in a manner that is most favorable taxwise, but the true meaning of the business transaction cannot be changed by a mere changing of name. Indeed we applaud every taxpayer who can arrange his business to insure the lightest taxation.

All these instruments must be construed in the light of the indisputable fact that the rental of anything increases in proportion to what goes with it. One might well wish to rent a motor vehicle with a competent driver at a much higher price than the vehicle alone, or one with an air conditioner rather than one without; or one could well prefer to rent a vehicle with a guarantee of mechanical help rather than one without this. We believe sound judgment requires us to hold, and we do so hold, that a lessor of a motor vehicle has the lawful right to add to the rental cost anything he furnishes in addition to the vehicle as existing parts of the article. Here we have the stubborn indefinite situation that while trying to rent a vehicle, extras may be added, and the rental costs increase, but this does not in the remotest degree alter the fact of rental. We therefore hold, as to the last two instruments, that they involve rented tangible personal property and, like the other instruments, constitute taxable transactions upon their execution, and the amount of tax depends upon the amount of consideration received therefor. Under the statute, "rental contracts" are put upon an identical basis as "sales contracts." Therefore, when either is executed, a tax transaction is created and it remains only to ascertain how much consideration is paid for either. In the case of a sale the consideration is the amount upon which the sales tax is based. Since a lease is analogized to a sale under the tax statute the consideration or rental is the amount on which the tax is collected. In both cases the tax liability arises instantly upon the execution of the contract. This alone definitely establishes tax liability,

but in both instances the consideration therefor determines the amount of such liability. This vital fact must be recognized before delving into what the amount and the actual consideration is determined to be.

As to the first four of the contracts herein dealt with the rental of the equipment was expressly stated to be the full amount of the consideration. The last two are indefinite, evasive and obviously schemingly drawn so that a definite judgment cannot be rendered as to their legal meaning without resort to consideration of matters outside them, but because of similar situations and the policy as thus shown by Grantham in dealing with precisely the same subject they are clearly shown to be lease contracts. When the verbiage, the camouflage, and the obviously intended deceptive terms are ignored, these last two contracts are found to be the same as the first four.

As an added reason for our construction, each contract contains a clause giving the lessee full and exclusive control of the equipment rented, which the Interstate Commerce Law requires, and our rules of construction require a construction that renders the contract legal rather than illegal. Thus we must give this clause full legal effect.

Upon the foregoing rulings we reverse the judgment below which held these six transactions not subject to this claim for sales tax.

■ Since the above ruling holds these transactions to be subject to the tax under *Code Ann.* § 92-3402a, supra, no decision is required as to the constitutionality of the third unnumbered paragraph of § 4a of the 1955 amendment to the Sales and Use Tax Act (Ga. L. 1955, pp. 389, 390; *Code Ann.* § 92-3448a), since the transactions are clearly taxable under other portions of the law without regard to the clause of the statute attacked as being unconstitutional.

■ The portion of the judgment complained of in the main appeal is not subject to the attack that the Revenue Commissioner did not make an assessment therefor within the statutory limit of three years. *Code Ann.* §§ 92-3434a, 92-3447a (Ga. L. 1951, pp. 360, 382, 387; 1952, pp. 334, 336; 1953, p. 184; 1960, pp. 941, 942, 1007, 1008); *Code Ann.* § 92-8446 (Ga. L. 1937-38,

Ex. Sess., pp. 77, 100; 1943, pp. 204, 206, 208). *Farr v. Williams,* 214 Ga. 525 (106 SE2d 14) ; *Thompson v. King Plow Co.,* 74 Ga. App. 758 (41 SE2d 431) ; *Forrester v. Pullman Co.,* 66 Ga. App. 745 (19 SE2d 330) ; *Undercofler v. White,* 113 Ga. App. 853 (149 SE2d 845). The assessment is like a "mother hubbard" in that it covers everything. Its language can easily be applied to every item covered in this part of the judgment, but since it also covered the income from the six leases, and we have held above that the claim based upon the leases is valid, the law would not allow a separate sales tax on those items purchased in the execution of the lease contracts. The ruling upholding the tax levies on the leases requires a ruling that the lower court erred in allowing recovery of taxes for items used exclusively in the leasing business as a substitute for the taxes held due under the lease contracts. The trial court can sort these out and give judgment for purchases, sales and leases of equipment disconnected from the lease contracts in addition to the amount of assessment as to the lease agreements, provided, of course, the judgment could not exceed the original assessment.

There are a number of other collateral rulings enumerated as error, but since they are rendered nugatory by our rulings in this opinion and cannot arise in the final disposition of this case, we do not deal with them. Our rulings above require a reversal under the cross appeal, and a reversal in part and an affirmance in part on the main appeal.

*Judgment affirmed in part and reversed in part on the main appeal, and reversed on the cross appeal. All the Justices concur. Undercofler and Frankum, JJ., disqualified.*

## ON MOTION FOR REHEARING.

■ After careful consideration of the motion for rehearing, we are confident that our ruling that the judgment denying a motion for summary judgment is not the law of the case as to the meaning of the leases, or that the leases and other evidence made an issue of fact which a jury alone could decide, is correct. Our judgment is supported by the actions of opposing counsel in this case in moving for a directed verdict because there were no issues of fact, and the judge's sustaining both motions and excusing the jury. Presumably the judge construed the former

judgment denying a motion for summary judgment and held, whether erroneously or correctly, that it did not rule that there were issues of fact. This ruling, as requested, that there were no issues of fact, became the law of this case, whether right or wrong. It was not excepted to and became final; indeed it could not be excepted to by either attorney who procured it. *Saturday v. Saturday*, 224 Ga. 236 (161 SE2d 509).

■ We cannot hold that the State is estopped by procuring a summary judgment for taxes exclusive of the leases, because it was not what was asked for, and, as we understand it, each month is a tax-paying unit.

■ While our decision virtually destroys the judgment for a penalty, yet we could not under the statute direct that no penalty for being late be added to the taxes under the leases which we have held is demanded by terms of the leases.

■ As to four of the six leases which expressly say the amount payable thereunder is for the rental of personal property, and under our construction the other two, while not saying this means this, there is no basis for apportioning the amount paid for rental and the amount paid for other expenses of the lessor. We have held that all such expenses were incurred in order to make the leased property more attractive and thereby obtain a larger rental therefor.

*The motion is denied and our decision is adhered to. All the Justices concur. Undercofler and Frankum, JJ., disqualified.*